Call our next case, Revell v. Port Authority, et al. Good morning, Your Honor. Good morning. Richard Gardner, representing Mr. Revell. In this case, Your Honor, the case turns on Section 926A of Title 18, which essentially, without going into the details, preempts state law to some degree regarding the transportation of firearms through a state... If there were no due process violation or probable cause violation, then one wouldn't have to reach 926A. Is that correct? I think it's actually the other way around, Your Honor. The claim is that there's a right of action under 1983 for a violation of 926A. I don't think you have to reach the probable cause issue because the question, first of all, is whether there's a cause of action created pursuant to 926A, and I think you addressed that first. And if there is a cause of action, then the probable cause issue is moot. So you look at Blessing and not Graham? That's right. But the district court didn't do that. Well, the district court didn't do that. I think, first of all, Graham, I don't believe, really has any application at all. That had to do with when you bring an excessive force claim, what's the basis for that? And the Supreme Court said the basis for that is the Fourth Amendment, and that's clearly the case. Graham didn't address at all the question about the violation of a federal statute and whether a particular federal statute creates a cause of action. I think the governing case here is Blessing. Can I ask a question about a factual matter, if I might? Sure. In your reply brief at page 2, you quote the appellee's brief, where they say that it's undisputed that Officer Erickson's questioning of Revelle revealed that Mr. Revelle had admitted to an overnight stay in Newark while in possession of the gun and hollow-point bullets, and that he admitted he planned to use the gun for personal protection while traveling. Then you say both these facts are disputed, and I'm wondering if you can show me or tell us where in the record that that is disputed. Sure. It's explained on the following pages in the brief, but with regard to the first fact, the admitting to the overnight stay while in possession, during the deposition, the officer was asked, did he tell you anything about what he did with the bag after he picked it up? And the response is, he didn't go into detail to the best of my knowledge. It was simply never addressed. It's addressed in your, I thought, let me quote you something from your client's deposition. This is from page 37 of the joint appendix, and it's pages 73 and 74 of your client's deposition, in which the answer is given that, quote, I explained to them my baggage was mismarked, put off here, I missed the last connection the night before, and then I had been forced to stay in a hotel. So he's saying he was in a hotel, but I caught the very first connection out in the morning that was available and not wanting to stay there longer than I needed to for any reason. And then, as I recall, somebody said, well, we need to wait for somebody that was in charge to show up, so we waited there. And I remember looking at my watch, thinking, if this interrogation doesn't get over pretty soon, I'm going to miss this next bus. And so I suggested to some of the officers, you don't know how long this might last. I really don't want to miss my next connection. So in that response, it looks to me like your client is saying, yeah, I told them I missed my flight, I went to a hotel, my baggage had been mismarked and put off here. Isn't that all an admission that he said to Erickson what Erickson said he said to him? Well, I don't think that's it. The specific question was whether Erickson knew that he took the bags to the hotel that night. I don't think that language says that he, yes, I took the bags with me to the hotel that night. I mean, the issue, this is in the context of whether there was probable cause for Erickson to make the arrest. Which is a highly significant question, you'd agree, wouldn't you? Well, as I said, for the probable cause question, yes. I don't think the Court needs to get to the probable cause question because that's a Fourth Amendment issue, and I believe the claim should be focused on whether there's a claim under 926A. That, I believe, is the initial question. You never have to even address the probable cause question. All right. Assume for the sake of discussion that we think we have to address probable cause. If we have to address probable cause, would you agree that a reasonable officer hearing what your client said he said could conclude the guy had his bags with him in the hotel overnight? I think it's a reach that a reasonable officer could draw that conclusion because you have places at the airport where you can stick bags in lockers. But looking at it another way, and maybe I flip the probable cause to be, in essence, a qualified immunity issue. That, okay, you have a blessing situation here, but what does the reasonable officer think and what does he think the jurisprudence is? And you look under 926. And to my mind, the biggest problem here is not whether he really took it to a hotel or whatever, but it's clear that the concept of during such transportation and whether it's accessible in the transporting vehicle, whether 926 anticipates or encompasses a situation where there is a holdover. I mean, what if you know that somebody is, you know, hold up, you know, that the flight's delayed and they're there for three days? Well, clearly, this stuff is not still in the transporting vehicle. And I think isn't a reasonable officer entitled to say, well, that's not this situation. The situation is you get on a plane, you're parted from your stuff, you get where you're supposed to go, everything's fine, and during that time, you know, you're not you're entitled. But if there is, you know, during such transport, well, what, you know. And so isn't there a real problem even assuming we get through, you know, even assuming we say entitlement means it's a benefit for him. Taroko was wrong. You know, there's enough here. We get through blessing and we say, aha, there is a right to suit. Don't we have a isn't there a qualified immunity issue? Well, I think, first of all, I think that if you get to that, if you do get to that point, and I think since this was a motion to dismiss on that it has to go back to the district court to address those other issues. But I think the statute talks about it's not just accessibility in the transporting vehicle. The statute says that neither any the firearm nor any ammunition being transported is readily accessible or is directly accessible from the passenger compartment of such transporting vehicle. Of such transporting vehicle.  So you have two standards, either it's readily accessible, which I think contemplates the idea that there would be times when you're not going to be in the transporting vehicle, or when you're in the transporting vehicle is it directly accessible. I think that's how that statute is structured. That it's not readily accessible or directly accessible from the passenger compartment because it wouldn't make any sense to say readily and directly. It would be the same thing twice. We're lawyers. We're trained in this. But I'm saying a police officer reads this and says, oh, we're not in a transporting vehicle anymore. So this doesn't apply. What did you just say about needing to go back to the district court? If this court determines that there is a cause of action because it was dismissed, the initial order of the district court dismissed the initial complaint solely because there was no cause of action, recognizable cause of action under 1983, I think if this court finds there is, then I think it has to go back to the district court at that point. We couldn't decide the qualified immunity on our own based upon our reading of the record? Well, I would question, first of all, whether I think based on the record as it exists, it really isn't adequate, I don't think, to deal with the qualified immunity with respect to this question as to readily accessible and directly accessible and as to what the officer knew. Isn't it the case, though, that the qualified immunity question has as one of its prongs that there is a clearly established right? Right. If there's no court of appeals opinion anywhere in the country dealing with this, and the most prominent district court opinion says there isn't a private right, isn't on this record it abundantly clear that that is not a clearly established right? How could, let me ask it this way, what would the district court do in the way of further development of a record that would make it seem that this was a clearly established right? Well, first of all, I would, with respect to the question of clearly established right, the fact that there's no court decision doesn't necessarily make it not a clearly established right. I mean, the Supreme Court has said that you can look at the statute itself. Clearly established is not dependent on the existence of case law. What in the Fourth Amendment area tends to be, because you have the word unreasonableness in the Fourth Amendment, when you've got a statutory right, I don't think you need to look to case law. If the statute were really clear, I mean, if it said anybody who's carrying something and has it in a separate, you know, one of these aluminum cases, you're home free. We've just been arguing over the meaning of the word or in the statute. Well, this statute doesn't clearly establish the right, does it, really? I think it does. I mean, it says readily accessible or directly accessible from the passenger compartment of the vehicle. I think it does clearly establish what the right is. Congress enacted a statute, and the officer said that he was familiar with the statute, that he had read it, he'd been trained on it, and I think a reasonable officer, particularly in that circumstance, it is clearly established from the text of the statute. But he wasn't in a vehicle, and what does the statute say about when you're not in the transporting vehicle? Well, I think it says that it can't be readily accessible. And you think that that means it's clear that that's separate and distinct from the issue of it being in the transporting vehicle? I think it is. I mean, it says readily accessible or directly accessible. As I said, I don't think Congress would have enacted a statute that used two different modifiers for accessible and said essentially that means the same thing, that they both go together. So it's your position that an officer on the scene needs to be able to determine that the person he's confronted with isn't otherwise prohibited because that's part of the statute, which presumably would take a little research, and then decide whether an overnight stay breaks the transporting train of events or not, and then decide just how accessible a firearm has to be before it's accessible within the meaning of the statute, and then research the law in the originating jurisdiction, county, state, then research the law in the destination location, county and state perhaps, and then having decided and figured all that out, then is when the officer's in a position to say, okay, now I can make a probable cause determination. That's your view of how the statute's supposed to work? Essentially, that's right, Your Honor. And what you're – I know you went through all the details. What you're essentially – underlies what you're saying is that Congress made a stupid choice here. They shouldn't have done this. And I think Congress has done it, and if that's the burden that's imposed on law enforcement, then the argument that the Port Authority and other law enforcement has is with Congress for imposing such a heavy – what they perceive to be a very heavy burden. And it may be, but that's not for the court. Well, isn't it conceivable that what Congress did was to erect an affirmative defense to prosecution as opposed to an independent right to be determined in advance of a probable cause decision? I don't believe so. I think it says any person shall be entitled. I don't believe that is the words of an affirmative defense. That is an affirmative entitlement that Congress has created. And it's possible Congress didn't contemplate the problems it was going to create, but that's what they created, and I believe that – You're saying it should have said no state shall if it wanted to make it a defense? Yeah, I think they wouldn't have used the word entitled. The word entitled makes this more than an affirmative defense. It makes it an – it's an affirmative right that a person is clothed with when he goes through a state or a local jurisdiction that has a problem. And the officer has the obligation. The Supreme Court has said in a very relatively recent case that federal law is as much part of state law as an act enacted by the state legislature. By the way, how is there a claim against the Port Authority here? There's no Monell claim, is there? The Port Authority is – we didn't address that because that really wasn't an issue in the lower court. The Port Authority recognized that they do have potential liability. There's, again, a Supreme Court case law, and I believe there's a Third Circuit case law that makes them liable as well as an individual. Responding to – Well, I'm sorry, on a policy, and we've – I'm sorry. It is a Monell kind of claim, but we alleged that this was as a result of a policy of the Port Authority. We never – that issue didn't get addressed because the district court dismissed it on the blessing issue. That's in the complaint? That's in the complaint, yes. It specifically alleged that this was pursuant to a policy. So where does that stand? It's still there, the claim? The claim is still there. I mean, the district court dismissed the case based on the fact that there was – dismissed the first complaint on the ground that there was no cause of action. Did we have a final order of the district court? Dismissing the claim, yes. But the first one was dismissed on the blessing ground, if you will. But is the Monell claim still alive in the district court?  Yes. The claim is still in the complaint. You mean – well, I think the question is if it's still alive, then I guess we would have a finality problem here. So the question that you're being asked is, do we have appellate jurisdiction because everything in this case was resolved before it showed up here? Well, that issue, the question of whether there was – this came up here on – first of all, it was a motion to dismiss and then summary judgment. The Port Authority didn't raise any objection to the claim. Maybe I'm misunderstanding your question as to whether – No. I guess if there's no right, underlying right, there's no policy that – My question is just this. There was a final decision that disposed of whatever claim you had against the Port Authority, right? That's right. Okay. But on – secondly, firstly, on the blessing issue, and then when we filed an amended complaint, the amended complaint was resolved on the probable cause issue. Okay. So we never got to the question, in fact, was there a policy, but it was alleged. Okay. Thank you. All right. We'll hear from you on rebuttal. Good morning. Good morning. May it please the Court, my name is Donald Burke. I represent the Port Authority of New York and New Jersey and Police Officer Scott Erickson in this case. You represent everyone? You represent everyone? Yes, Your Honor. Both. Both parties. We urge the Court to uphold the District Court because the District Court applied a common-sense analysis and it led to a common-sense result with an appreciation of the very, very difficult job that police officers have. But it didn't address the main issue. The Monell case? No, it didn't address whether there's a cause of action under 926. Well, the judge in its first opinion, there are two opinions, in 2007, June 29th, did address that. And the Court very – I thought – analyzed it very well and noted that there were no appellate division decisions on the case. It was a case of first impression. Didn't she decide this on a Fourth Amendment ground? Yes, she did, but later. Well, if she says that the reason that there's not a cause of action here is because there is no cause of action because the Fourth Amendment trumps, how does that – yeah, go ahead and give your best pitch on that. Well, I think this, that the District Court very astutely observed that when there is a regulatory scheme providing a remedy such as the Fourth Amendment constitutional violation, then Congress clearly could not have intended. And we can get into the blessing factors, but blessing and all those cases have to do with regulatory things. If you go back to Pennhurst and some of the earlier cases, what we're trying to do is ascertain congressional intent. And Pennhurst instructs that congressional intent is ordinarily not to provide private remedy. So I think we start with that threshold question. And if you look at this statute, it doesn't talk at all about a private remedy or a private right of action. How about when it starts out with the words, shall be entitled, language of entitlement right at the start? That is different than a remedy under 1983, which the Court said you have a remedy under the Fourth Amendment. Why is Congress going to give you another one? And that's what I think makes sense. You're assuming the Fourth Amendment is implicated here, i.e., prohibition against seizures. I mean, she expressly talks about the fact that it really had to do with the Second Amendment, that people had an affirmative right to carry firearms, notwithstanding any state regulation saying that they couldn't. And it is as much as licensing, as much as anything. It's not limited to the seizure of guns or searches for guns. It's an affirmative grant of the power that if someone wants to enforce the fact that in New Jersey you can't have snub-nosed bullets, which isn't a Fourth Amendment issue, it's a matter of state law, this law says, oh, yes, I can if I'm doing this. So, really, the Fourth Amendment piece, you know, conceptually there's some Fourth Amendment implications, but it's certainly not an exclusively Fourth Amendment provision. Well, let me explain how I think the District Court went and how I'd urge this Court to address the issue. This is a clash of criminal laws. And criminal laws, you know, people are protected from police officers enforcing criminal laws by the Fourth Amendment. I think that when Congress passes this law, by the way, it begins with notwithstanding any law to the contrary. That's the beginning language. So it does draw a line between state law and federal law. Right, but not only criminal, it could be licensing. It could be the fact that in New Jersey you need a license to have snub-nosed bullets. And a person's arrested for not having the license has nothing to do with, you know, Fourth Amendment as such an unreasonable search or seizure. But I think the Court below, when it came to the conclusion that Congress didn't intend to provide a remedy under this statute solely through this statute when there's an available remedy under the Fourth Amendment. And that, to me, makes sense. Well, what's the key case that informs that? Because she mentions blessing, but then doesn't follow through on blessing. Well, I think it's back to the basics, which is to ascertain congressional intent. But if you have a statute that says X, you look at X. You don't go behind it and try to figure out how to kind of undermine X. No, no, no. And many of the cases that are addressed in both briefs come to the conclusion that there's no private right of action under 1983. But blessing itself came to the conclusion that there is no private right of action. What if we were to come to a conclusion that there is? A private right of action under 926A. Then what essentially you're doing, I think, under these circumstances, is taking the reasonableness away with the Fourth Amendment approach. Because my adversary is arguing we don't get to the Fourth Amendment reasonableness analysis. If there's a violation of the statute, it's a strict liability offense, and we're entitled to damages. And in a criminal context, when there's an arrest, I just don't think that makes sense. And I think that's what the district court saw. Would we ever get to that point if we were looking at this? Let me ask it this way. Certainly, Mr. Gardner has one view of what the statute means. If we look at it and we believe that what it means is if you're transporting this and you break a line of transportation and it is readily accessible to you, then you're no longer covered by the statute. If he's not covered by the statute, then does the question of whether there's a private right of action become irrelevant? Yes. And if that private right of action issue is irrelevant, then, of course, the issue of qualified immunity is also irrelevant, right? Because 926A just doesn't come into play at that point. And then you have the state statutes. Right. I would agree with that analysis, and that does make sense. Then would you address for me the assertion that your opponent made at the get-go, which was you don't look at the probable cause issue until you decide the issue of private right of action, et cetera, under 926. Is his logical progression correct, or is it erroneous? And if it's erroneous, why is it erroneous? And if it's correct, why is it correct? Well, I think it's erroneous because it leads to one of the main reasons is because it leads to an untenable result. But in this situation, the 926A doesn't apply anyway because the police officer was reasonable in his conclusion for a number of reasons, but one, that it was readily accessible while he had his overnight stay in Newark. So I would urge the court to adopt the district court's analysis that we put 926A aside because the Fourth Amendment provides the remedy. You don't even have to get into the Fourth Amendment piece if you look at it as saying that 926A doesn't apply, do you? I mean, you don't have to ask whether the Fourth Amendment trumps a 1983 right under 926A. It's simply a matter of looking at the events here and saying, under these circumstances, 926A doesn't apply because this gentleman, through no fault of his own, came back into possession of his luggage and it was readily accessible to him. If those are the facts, does the legal conclusion follow that it was readily accessible, therefore 926A does not apply? Well, I'll tell you what leaves me somewhat uneasy because in law enforcement, lots of cases in the Supreme Court have recognized that a police officer doesn't have to be dead on every time. It's entitled to some, you know, under qualified immunity and the Harlow Standard and those cases that come off of that. And I think they're entitled to that. But I think if you had a hard and fast rule that it either is or isn't and don't leave a little bit of leeway for a police officer in the field to decide the case in front of us. That's what qualified immunity is all about. Well, I'm afraid under that analysis we don't get to qualified immunity because qualified immunity is a Fourth Amendment concept. But we wouldn't get to it because we wouldn't need to get to it if that were the analytical approach, correct? Yes. I guess what I'm asking, and I'm going to be curious to hear Mr. Gardner's take on this too, given the facts in this case, does 926A even apply? And if it doesn't apply, do all these other issues fall by the wayside because we're not dealing with a case where the protections of 926A apply to Mr. Revelle? Well, with that analysis I do agree that 926A does not apply. And part of the reason, and Your Honor asked questions about the overnight stay, and I would refer to Police Officer Erickson's testimony, which was undisputed, where he says on page 73, and it's Appendix 37, and that he had taken possession of his firearm, taken possession of his firearm and it was readily accessible, and went to a hotel overnight. But then you get into the untenable situation of someone who is flying on an airplane and has a mishap, no fault of his own, has to retake possession, go to a hotel. I mean, quite frankly, anticipating what can happen in airline travel, this could give someone absolutely no comfort if we were to hold that during such transportation, et cetera, does not enable someone with this situation to regain possession so that they don't totally lose their arms and their ammunition. I mean, this provision is good as far as it goes. The issue is if it doesn't address this mishap situation, can we say that that's definitely not covered? Let me ask you a question. You said qualified immunity is related only to Fourth Amendment. I mean, if we were to find that 926 were, you know, there is a private right of action, would we not nonetheless determine that a reasonable officer construing this section would not believe that it was implicated and there would be qualified immunity, separate and apart from the Fourth Amendment? I would hope so, Your Honor. But, you know, I think the qualified immunity comes from those cases that deal with the constitutional rights of the Fourth Amendment, not statutory violations. What about the question that Judge Rendell teed up about what's the reasonable gun owner to do? Mr. Revelle, doing everything he's supposed to do. I mean, he dotted the I's, crossed the T's, trying to do the right thing. He gets fouled up by the airline, ends up spending three days in jail in Essex County, New Jersey, and doesn't get his personal property back for a couple years. I mean, what's the reasonable gun owner to do? Not come in possession. And every day, every day, Judge, they call the police. Is that what Congress intended? Well, stop. When you say not come in possession, they take his bags. The airline is the one who made the mistake. They put his bags off the plane. Was he supposed to go, I can't touch them, I can't touch them? No, let me explain. The baggage was in the lost baggage area. Mr. Revelle went and retrieved his luggage and brought it to the hotel van. Now, the reasonable person would, instead of taking possession of that luggage, call the police, police signs all over the place, and say, and it happens every day, Your Honor, every day it happens. So will you hold this for me? The police take it, they put it in the safe. They come back in the morning, they get it, they get on their flight, and they go. That happens all the time with knowledgeable travelers, because they know they're not to come in possession, especially in New Jersey, of the weapon and stay overnight in a hotel. The police, there's police signs all over the place. That's what happens, that's what they do, and that's what the knowledgeable traveler who's carrying weapons and ammunition has to do under these circumstances. And I don't think it's unreasonable, Your Honor, to call the police to make sure they're in compliance with the law. And the police officers at the airports are more than happy. They do this routinely. They take it, they put it in the evidence locker, they return it the next day or when the person comes back. Now, we didn't talk about the due process issue, and he did not have his gun for quite a long time. But from the Port Authority's perspective, Your Honor, the Port Authority was holding that as an agent of the Essex County prosecutor. As soon as Mr. Revell made a request of the prosecutor, they made a determination and directed us to release it. The fact that they didn't ask when this was administratively dismissed and waited until July of 2008 or sometime right before then doesn't constitute a due process violation. So can you appreciate maybe the frustration that would be felt by somebody in Mr. Revell's position who maybe isn't a traveler on a regular basis with a weapon? Absolutely. But suddenly, I mean, is the position that there's just nothing to be done? We put you in a metropolitan suburban jail for three days and kept your property for, I can't remember how many months it is. And the answer to that is, despite what Congress has said, the answer to that is, well, that'll teach you to come through New Jersey. No, I don't think so, Judge. But you have to look at this from a police officer's perspective. A police officer is entrusted with making determinations about violation of state law, and the state law here was absolutely clear. Now, he considers 18 U.S.C. 926a, asks all the questions, like are you able to possess and carry in Pennsylvania where you're going? And Revell can't answer? Well, I mean, you know, he should be able to answer. He should be prepared to defend his transportation of firearms under this statute. And if it will become readily accessible, which I think in this case there's no genuine issue of dispute that it did when he grabbed his bags and went to a hotel, he should know as a savvy traveler who's carrying weapons, not everybody carries weapons, but somebody who does ought to know that that is something that might get him in trouble. And if they do, before they take possession, a simple phone call to the police to have them come, take possession of that weapon just as the airline did, give it back when they're going back on their flight, I don't think he's asking too much. But I do appreciate that Mr. Revell, you know, was in a difficult position. But I think he put himself there, Your Honor. I think our police officer was in a very, very difficult position. I think to ask a police officer to do the type of thing that the plaintiff is demanding, that they have knowledge of the place, you know, whether possess and carry in the place of origin, place of destination, what does it mean to be readily accessible? Can you go overnight or can you stay for a week in New Jersey? Those types of things are very difficult calls. I think the district court had it right in allowing, you know, coming to a result that recognized the very, very difficult job. And if you read those deposition transcripts, I think it comes across that the police officer was trying. Gotcha. Thank you. Thank you. First I want to address Judge Jordan's question. I would agree that if the evidence in the record was that the firearm was readily accessible, then even if there was a claim under 1983 for a violation of 926A, that that claim would fall. But at this state of the record, the record does not support that. The record at this point supports that it doesn't have any evidence with regard to readily accessible. If he's got it in the hotel and the record does support, because Officer Erickson testified about what Mr. Revelle said, Mr. Revelle testified about what happened, and the clear implication from the record is, I picked my bags up, I went to the hotel. Regardless of whether he went to the hotel, when he shows up here and they're confronting him, he has it in his, doesn't he have it in his hand? No, no, no, no. He has it, they tell it, TSA or the ticket agent says, go over to TSA, put your bag, give them the bag. Okay, but he had had it there, so. Well, no, he never, the TSA opens up the suitcase and inside the suitcase they find the locked container. They ask him for the. It gets to TSA, that's the point. It gets to TSA because of him. Via him. He picks it up from the lost baggage. Right. He takes it to the TSA. Right. At that point, it's in his hands. And whether or not he went to a hotel, he could have slept on a couch, you know, on a bench in the airport. With it beside him, it was. Right, but it wasn't readily accessible at that point. It's locked, it's inside a suitcase. There's a locked container inside the suitcase. Who has the keys? He has the key. He has to get the key. But, Your Honor, there is case law. We never, this issue was not litigated. But I think at this point you have to look at the facts in the light most favorable to Mr. Revelle. That's why I was suggesting that if you find there's a cause of action as a matter of law, that it's got to be remanded because the issue of readily accessible really was not litigated. And at this point, given the fact that the gun was in a locked container and Mr. Revelle had the key and that it had to be unlocked to get at the unloaded firearm. So your position would require the determination as a matter of law, not fact, as a matter of law, that having the case in your hand and the key in your pocket is different from having the gun readily accessible. Well, I would have worded it slightly differently than having it in the suit, having a locked container inside a closed suitcase is not readily accessible. It's in your hand and you've got the key. And your position is as a matter of law that's not readily accessible. That has to be your position, right? That is the position. And when you go to a hotel, the presumption is you open the suitcase? Well, I don't think at this point for summary judgment purposes you can't make any presumptions contrary to Mr. Revelle. In fact, you have to make the presumption. We're talking about genuine issues of material fact. Right. Right. The facts, I don't think, are in dispute. Under these circumstances, there is still a genuine issue of material fact. No, no. I'm saying that for summary judgment purposes, the facts have to be construed, if you will, in the light most favorable to Mr. Revelle because he's the non-movement below. And I think under these facts, you can't, as Judge Jordan indicated, there's an implication. And I think you can't look at implications against the non-movement. All the inference has to be taken in the light most favorable to the non-movement. So I don't think at this stage of the record, this stage procedurally, that you can get to the question of whether it was readily accessible as a matter of law. It's all reasonable inferences. It's all reasonable inferences. It's relatively clear that he goes and stays in a hotel. Nobody denies that. And it's relatively clear he had his luggage with him when he went to the hotel. Is it a reasonable inference to think that he didn't get into his own suitcase when he stayed overnight in a hotel? Or is that, I mean, I guess we're talking about what's reasonable or not. We have to draw every inference, but they have to be reasonable inferences. And we haven't briefed the whole question of reasonable accessibility. I mean, if the court would like that to be done, we can certainly do that on the record that we have. Well, I think the record at this point is inadequate for that purpose. This never became an issue in the summary judgment on the second phase of the case. But I think based on the record as we have it at this point, I think that if you find there's a cause of action that you can't then jump to the next step and say, okay, the statute doesn't apply because the firearm was readily accessible. I assume you would want us to say that Turaco was wrongly decided. Yes. And that case was argued in the Second Circuit last May, and they have not handed down a decision yet. Interesting. If there are no further questions. Thank you. Thank you. Case is well argued. We'll take it under advice. Thank you, Your Honor.